[Crim. No. 4507. Second Dist., Div. One. Nov. 9, 1950.]

THE PEOPLE, Respondent, v. JOSEPH C. ROMERO et al., Defendants; MANUEL C. ARGUELLO, Appellant.

Morris Lavine for Appellant.

Fred N. Howser, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

DRAPEAU, J.—Defendant Arguello and two companions caused a pitiful tragedy. One of them was a girl, 18 years of age; the other, Joseph C. Romero, was a young man of the same age. Defendant was of mature age.

The girl drove the men around east Los Angeles in her automobile, late in the evening. They planned to look for a liquor store and to rob the proprietor. Romero was armed with a revolver, which the girl kept for him until just before the crime was committed.

After cruising for a time, they drove past a liquor store, which they determined to rob. At that time defendant was driving. He stopped the automobile at the street curb a block away. The girl remained in the car. The engine was kept running and the lights were turned off.

The two men walked back to the store, and went in. Romero said to the proprietor: "This is a stick up." The proprietor said he had to open the cash register, and reached in his pocket for a key. Romero thought he was reaching for a gun, and wantonly shot him in the stomach.

Both robbers ran out of the store. As they were leaving the proprietor fired several shots at them, and one bullet hit Romero in the shoulder.

The two men raced to the car, and it started away with the girl driving. On account of her nervousness, defendant took the wheel. They went to an apartment occupied by Romero, where they boiled some table forks to remove the bullet, but abandoned that idea. Then they asked a mortician to remove the bullet. This he refused to do. Then they decided to go to Mexico to have the bullet removed. The two men were arrested on the highway near Oceanside, the day after the crime.

The proprietor of the liquor store died the morning after he was shot, leaving surviving him a widow and two babies. The widow went with him to the hospital. At the hospital he said to her: "Go home and take care of those kids, and don't be afraid. If I die I am just another dead man." She never saw her husband alive again.

The girl companion of defendant became conscience stricken. Her brother told her to give herself up; "to walk to the nearest

police station''; and that when she got out he would take care of her. This she did. At the trial she testified for the People.

After trial by the court, both men were found guilty of murder, first degree, and sentenced to the penitentiary for life. Romero did not appeal.

■ Defendant Arguello argues that the evidence is insufficient to sustain the verdict against him.

The testimony of the girl, and his own admissions, prove him to have been a conspirator and joint perpetrator of the crime. The most that can be said for him is that Romero was perhaps the directing mind in the enterprise; that defendant Arguello was not armed and did not fire the fatal shot.

■ When two or more persons enter into a conspiracy to commit a robbery or a burglary and one of the conspirators commits a murder in the perpetration of the crime, all are equally guilty of murder in the first degree. It is no defense that those who did not actually participate in the killing, did not intend that the life should be taken in the perpetration of the robbery, or had forbidden their associate to kill, or regret that it had been done. (*People* v. *Witt,* 170 Cal. 104 [148 P. 928] ; *People* v. *Boss,* 210 Cal. 245 [290 P. 881] ; *People* v. *Cabaltero,* 31 Cal.App.2d 52 [87 P.2d 364].)

The trial court properly found against defendant's claim that he was too drunk to know what he was doing. Every fact in the case negatives that idea.

■ Defendant's principal contention is that it was error to submit the case in part to the trial judge upon the reporter's transcript of testimony on the preliminary examination. Defendant Arguello admits that this procedure has been approved in the recent case of *People* v. *Wallin,* 34 Cal.2d 777 [215 P.2d 1], but says that his case is different, because the record does not show that he personally waived the right to be confronted by the witnesses against him—that the waiver by counsel only is not sufficient.

The record shows that defendant told the court that he wanted a court trial, that he was satisfied to have the judge determine the matter without a jury; that the girl was called and testified; that after she testified the court inquired if the rest of the testimony was to be submitted on the transcript of the preliminary examination, or by testimony.

Thereupon the following occurred:

''MR. MARCUS: (who represented defendant Romero) : It

is to be submitted on the transcript, your Honor, to my understanding.

"THE COURT: Is that correct, Mr. Nunnelley?

"MR. NUNNELLEY (who represented defendant Arguello): Yes, that is correct with the defendant, Arguello. We would like, however, to take the stand ourselves.

"THE COURT: That is the opportunity he has. I understand it is stipulated, Mr. Marcus, on behalf of the defendant, Joseph C. Romero, that the remainder of the People's case will be submitted to the Court upon the transcript of the testimony taken at the preliminary examination, the defendant waiving his right to be confronted by the witnesses listed in that transcript, and waiving his right to further cross-examine, is that correct?

"MR. MARCUS: So stipulated.

"THE COURT: Is that correct as to the defendant, Arguello?

"MR. NUNNELLEY: So stipulated.

"MR. MARCUS: That is subject——

"THE COURT: Just a moment. Do you enter into that stipulation?

"MR. HOPKINS (for the People): We will so stipulate."

The same situation is here present as in the Wallin case. The Supreme Court of this state has declared the law, and we are all bound by it.

The judgment is affirmed.

White, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 7, 1950.